UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------

VIDAL BALDERAS,
*on behalf of himself, FLSA Collective Plaintiffs and the Class*,

     Plaintiff,

 v.

8 CHELSEA CORP.
  d/b/a RIKO PERUVIAN CUISINE,
JAMAICA 153 CORP.
  d/b/a RIKO PERUVIAN CUISINE,
APU FOODS CORPORATION
  d/b/a RIKO PERUVIAN CUISINE,
JACKSON 79 CORP.
  d/b/a RIKO PERUVIAN CUISINE,
44 SUNNYSIDE CORP.
  d/b/a RIKO EXPRESS CAFÉ,
WALTER BURGOS and JESSENIA BURGOS,

     Defendants.

**Case No.** 18 CV 11149 (VEC)

---------------------------------------------------

## DECLARATION OF ANGELA KWON, ESQ.

I, ANGELA KWON, under penalty of perjury, affirm as follows:

1. I am an attorney at Lee Litigation Group, PLLC, Plaintiff's counsel in the above-captioned matter. I am familiar with the facts and circumstances of this action to the extent set forth herein. I submit this declaration in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Stay the Action.

2. Since the commencement of Plaintiff's action on November 29, 2018, I engaged in extended e-mail and telephone discussions with counsel for Defendants.

3. On December 20, 2018, I sent Defendants' counsel Plaintiff's calculation of damages and made a settlement demand based on such calculation. During telephonic

discussions on December 20, 2018 and January 7, 2019, we attempted to engage in good-faith settlement discussions with Defendants, specifically to avoid protracted, expensive litigation. On both occasions, however, Defendants' counsel informed us that his clients are taking a "no pay" position and will not be making any settlement offer, leaving Plaintiff no choice but to litigate.

4. In December 2018 and January 2019, Defendants' counsel sent Plaintiff's counsel a copy of the arbitration agreement between Plaintiff and Defendants, titled "Mutual Agreement to Arbitrate" and dated June 4, 2018 (hereinafter, "Arbitration Agreement"). We reviewed the Arbitration Agreement with Plaintiff who confirmed that he recalled being mandated by Defendants to sign the agreement.

5. Upon review of the Arbitration Agreement and the "Arbitration Fees and Costs" provision under paragraph 9 of the agreement, I e-mailed Defendants' counsel on January 7, 2019, requesting confirmation on whether Plaintiff would bear the initial $400 case management fee only, and Defendants would bear all other arbitrator and administrative fess arising from the arbitration. On the same day, Defendants' counsel responded, stating no, all arbitration fees would be split 50-50.

6. From January 7, 2019 through January 10, 2019, I explained to Defendants' counsel that Plaintiff has limited financial resources and is unable to afford to pay the costly arbitration fees, which is certain to be significantly more expensive than the cost for Plaintiff to prosecute his claims in federal court. Despite communicating that Defendants' Arbitration Agreement itself states that the "Company shall bear all reasonable and necessary fees and costs of the arbitration forum that Employee would not otherwise be required to bear if the Claims were brought in court," Defendants continued to insist that all arbitrator and administrative costs of arbitration will be split 50-50.

7. On January 10, 2019, I also urged Defendants to make a settlement offer in response to our good-faith settlement demand. As of this date, the only "offer" made by Defendants is the cost of filing the Complaint, i.e. $400.

8. In January 2019 and again on March 29, 2019, I contacted JAMS, which the arbitration organization designated in the Arbitration Agreement, to inquire about JAMS' policies regarding fees and costs in employment arbitrations and request the fee schedule for arbitrators. Specifically, I requested the fee schedule of three experienced arbitrators based in New York, Mr. Stephen Sonnenberg, Ms. Robin Gise and Ms. Dina Jansenson, for employment arbitrations.

9. According to JAMS' fee schedule for the three arbitrators, the "Filing Fee" for a two-party matter is $1,500. The "Professional Fees" include time spent for hearings, pre- and post-hearing reading and research, and award preparation, and ranged from $600 to $675 *per hour* depending on the individual arbitrator. The "Case Management Fee" is assessed at 12% of the Professional Fees, and includes JAMS' administration services through the duration of the case, document handling, and use of conference facilities. Then, the parties incur additional fees for discovery disputes at $600 per party plus 12% of Professional Fees. In addition, if the arbitrator plans to employ a law clerk, the parties will also pay for the law clerk's hourly rate.

10. Based on JAMS' fee schedule described herein, and assuming a single day of arbitration session and at least one discovery dispute, Plaintiff estimates that the total costs from the start to the end of JAMS' arbitration process will be *at least* $8,000 to $10,000.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

4

Dated: New York, New York

    March 29, 2019

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By:   <u>*/s/ Angela Kwon*</u>

Angela Kwon, Esq. (AK 7296)
Lee Litigation Group, PLLC
30 East 39th Street, Second Floor
New York, NY 10016
Tel: (212) 465-1180
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

4