UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

VIDAL BALDERAS,

                                      Plaintiff,

                -against-

8 CHELSEA CORP. d/b/a RIKO PERUVIAN
CUISINE, JAMAICA 153 CORP. d/b/a RIKO
PERUVIAN CUISINE, APU FOODS
CORPORATION d/b/a RIKO PERUVIAN
CUISINE, JACKSON 79 CORP. d/b/a RIKO
PERUVIAN CUISINE, 44 SUNNYSIDE
CORP. d/b/a RIKO EXPRESS CAFE,
WALTER BURGOS, and JESSICA BURGOS,

                                 Defendants.

------------------------------------------------------------- X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 7/29/2019 |

18-CV-11149 (VEC)

MEMORANDUM OPINION
AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Vidal Balderas has sued his former employer for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* *See* Compl., Dkt. 1.  Defendants have moved to compel arbitration and to dismiss or stay the action, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* *See* Notice of Mot., Dkt 24.  For the following reasons, Defendants' motion to compel arbitration is GRANTED, subject to a modification to the Arbitration Agreement's cost-sharing provision.  This action is STAYED pending arbitration.

**BACKGROUND**

Plaintiff alleges that he worked as a dishwasher for Defendants, a chain of restaurants and its owners, between March and September 2018.  *See* Compl. ¶¶ 6–13, 27.  On June 4, 2018, Plaintiff signed an agreement with Defendant 8 Chelsea Corp. to "resolve by final and binding arbitration any and all disputes, claims, or controversies of any kind or nature" that could arise

1

against Defendants.[1]  *See* Rodriguez Decl., Dkt. 25, Ex. B (the "Arbitration Agreement" or the

"Agreement").  The Agreement states in relevant part:

> 1.      Claims Subject to Arbitration.  [Plaintiff] and [Defendants] mutually agree
> [to] resolve by final and binding arbitration any and all disputes, claims, or
> controversies of any kind or nature ("Claims") that could be brought in a court
> including but not limited to such matters arising from, related to or in connection
> with . . . your employment relationship with [Defendants].
>
>  . . . .
>
> 9.      Arbitration Fees and Costs.  To the extent required by law, [Defendants]
> shall bear all reasonable and necessary fees and costs of the arbitration forum that
> [Plaintiff] would not otherwise be required to bear if the Claims were brought in
> court.  In all other circumstances, [Defendants] and [Plaintiff] will each pay fifty
> percent (50%) of the fees and costs of the arbitration forum.  The parties shall be
> responsible for their own attorneys' fees and costs, except that the arbitrator shall
> have the authority to award attorneys' fees and costs to the prevailing party in
> accordance with the substantive law governing the Claims.  Any controversy
> regarding the payment of fees and costs under this Agreement shall be decided by
> the arbitrator.
>
>  . . . .
>
> 15.      Reformation and Severability.  If any clause or provision of this
> Agreement is decided [to be] void or unenforceable by any tribunal, then such
> clause or provision shall be modified or, if modification is not possible, stricken
> to the extent necessary to allow enforcement of this Agreement, and the
> remaining provisions shall remain in full force and effect. . . . .

*Id.* at ¶¶ 1, 9, 15.

Plaintiff alleges that Defendants failed to provide him with the proper minimum wage,

overtime wages, wage statements, and wage notices, as required by the FLSA and NYLL.

---

[1]      Although 8 Chelsea Corp. is the only Defendant named in the Arbitration Agreement, the Agreement states
that it applies to all parents, affiliates, subsidiaries, owners, agents, officers, and employees of 8 Chelsea Corp.
Rodriguez Decl., Ex. B ¶ 1; *see also Thomson-CSF, S.A. v. American Arb. Assoc.*, 64 F.3d 773, 777 (2d Cir. 1995)
("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement.").  Plaintiff does not
dispute that the Arbitration Agreement applies to all Defendants in this action.

*See* Compl. ¶¶ 44–60.  Defendants move to compel Plaintiff to arbitrate his claims and to pay

50 percent of the cost of the arbitration.  *See* Notice of Mot.; Kwon Decl., Dkt. 35, ¶ 5.

## DISCUSSION

Plaintiff does not dispute that he agreed to arbitrate his claims against Defendants.[2]

Plaintiff argues only that paying 50 percent of the costs of arbitration would make arbitration

prohibitively expensive for him, given his current income.  *See* Pl.'s Mem. of Law, Dkt. 33, at 1.

Based on this alleged expense, Plaintiff argues that the entire Arbitration Agreement should be

invalidated.  *See id.* at 6, 10.

---

[2]     In his Declaration, Plaintiff states, without any legal argument, that he was unable to understand the Arbitration Agreement because he does not speak English.  Balderas Decl. ¶ 9.  Even if Plaintiff had properly raised this argument, it would fail.  "An inability to understand the English language, without more, is insufficient to avoid [the] general rule" that "a party who executes a contract is considered bound by the terms of that contract." *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015); *see also Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 (2d Cir. 2017); *Molina v. Coca-Cola Enters., Inc.*, No. 08-CV-6370, 2009 WL 1606433, at *8 (W.D.N.Y. June 8, 2009) (collecting cases).

Plaintiff also states in his Declaration, again without argument or explanation, that Defendants "required" him to sign the Agreement "as a condition to continue" his employment.  Balderas Decl. ¶ 9.  This argument, too, would fail had it been properly raised.  "It is well-settled . . . that conditioning employment on the acceptance of an agreement to arbitrate disputes . . . is not itself unlawfully coercive." *Williams v. Parkell Prods., Inc.*, 91 F. App'x 707, 708–09 (2d Cir. 2003) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123–24 (2001); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204–05 (2d Cir. 1999)); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010).

Additionally, although Plaintiff does not raise the argument, the Court notes that the Arbitration Agreement covers all claims relating to Plaintiff's employment, even though Plaintiff signed the Agreement after he began working for Defendants.  "[C]ourts have found claims arising from or related to conduct occurring before the effective date of an arbitration clause to be within the scope of a clause that is not limited to claims arising under the agreement itself." *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) (emphasis and internal quotation marks omitted); *see also, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 407 (S.D.N.Y. 2003).

Finally, Defendants spill considerable ink in their opening brief arguing that the Arbitration Agreement requires Plaintiff to arbitrate his claims on an individual, and not a collective or class-action, basis.  *See* Defs.' Mem. of Law, Dkt. 26, at 8–12.  Plaintiff offers no argument to the contrary.  Accordingly, the Court need not decide this issue.

## I.      The Applicable Law

A court may invalidate a provision in an arbitration agreement that operates "as a prospective waiver of a party's right to pursue statutory remedies," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis and internal quotation marks omitted), including a provision that would make the arbitration "prohibitively expensive," *id.* at 243 (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 539 U.S. 79, 92 (2000)).  Whether arbitration is "prohibitively expensive" depends on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (quoting *Bradford v. Rockwell Semiconductor Sys., Inc.,* 258 F.3d 549, 556 (4th Cir. 2000)).[3]  When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92.

When faced with a provision in an arbitration agreement "which by itself would actually preclude a plaintiff from pursuing [his] statutory rights," the appropriate remedy "is to sever the improper provision . . . rather than void the entire agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124–25 (2d Cir. 2010); *see also Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 301–02 (E.D.N.Y. 2018).

---

[3]      Because "[n]either the Supreme Court nor the Second Circuit has elucidated how detailed a showing of prohibitive fees must be to invalidate an arbitration agreement . . . . most courts, including most district courts in this Circuit, follow the test set forth by the Fourth Circuit in *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2016 WL 5339552, at *7 & n.15 (S.D.N.Y. Sept. 22, 2016).

## II.     The Arbitration Agreement Is Enforceable

Regardless of whether the cost-sharing provision in the Arbitration Agreement is valid, the balance of the Agreement is enforceable.  In light of the severance provision, *see* Rodriguez Decl. Ex. B ¶ 15, the proper remedy for an invalid cost-sharing provision would be to strike or modify that provision, not to invalidate the entire Agreement, *see Ragone*, 595 F.3d at 124–25. Plaintiff does not explain why invalidation of the cost provisions of the arbitration agreement would require invalidation of the entire Agreement, perhaps because that position "is not supported either by the law of this Circuit or by the better considered authorities elsewhere." *Stewart*, 201 F. Supp. 2d at 293 & n.7 (collecting cases).

## III.    The Cost-Sharing Provision Is Modified

The Arbitration Agreement provides two options for dividing the costs and fees of arbitration.  If "required by law," Defendants must bear all costs that Plaintiff "would not otherwise be required to bear" if Plaintiff's claims proceeded in court.  Rodriguez Decl. Ex. B ¶ 9.  "In all other circumstances," Plaintiff and Defendant must each pay 50 percent of the arbitration's costs and fees.  *Id.*  The parties have identified no provision of New York law that would require Defendant to bear all costs of arbitration that Plaintiff "would not otherwise be required to bear"; accordingly, absent an order from this Court, the Arbitration Agreement obligates Plaintiff to pay half of the "fees and costs of the arbitration forum."  *Id.*

Arbitration would be prohibitively expensive for Plaintiff were he required to pay 50 percent of the arbitration's costs and fees.  Plaintiff has submitted a sworn declaration stating that he lives paycheck-to-paycheck:  he makes approximately $635 per week, has no savings, and is the primary source of income for his family.  *See* Balderas Decl., Dkt. 34, ¶¶ 11–13.  One of Plaintiff's attorneys also submitted a sworn declaration, stating that, based on a review of the

fee schedule of the arbitration organization designated in the Agreement, the total costs of the

arbitration are estimated to be between $8,000 and $10,000.  *See* Kwon Decl. ¶¶ 9–10.

Defendants do not dispute that estimate.  Crediting those assertions, even at the low end of the

estimated cost, half ($4,000) would be far more than Plaintiff could afford.  In contrast, bringing

the claims in this Court would cost Plaintiff only $400, the filing fee for civil actions (which he

has already spent).  *See* Kwon Decl. ¶¶ 5, 7.  Because a requirement to split the costs of the

arbitration would prevent Plaintiff from effectively vindicating his statutory rights, the Court will

require Defendants to bear all reasonable and necessary costs of the arbitration.[4]

Defendants argue that the expense of arbitration is "speculative" because, under the

Agreement, the arbitrator has "the authority to award attorneys' fees and costs to the prevailing

party in accordance with the substantive law governing the Claims."  Rodriguez Decl. Ex. B ¶ 9;

*see also* Defs. Reply Mem. of Law, Dkt. 38, at 3.  The Court disagrees.  This provision entitles

the arbitrator to award "attorneys' fees and costs"; it does not address the arbitrator's ability to

shift the costs of the arbitration forum (such as the arbitration's filing fee and the arbitrator's

hourly fee).  Rodriguez Decl. Ex. B ¶ 9.  Indeed, the Agreement draws a distinction between

"*attorneys'* fees and costs," which can be shifted by the arbitrator to the losing party, and the

"fees and costs *of the arbitration forum*," as to which the Agreement is silent on the arbitrator's

ability to shift.  *Id.* (emphasis added).  Additionally, even if the Agreement permitted the

arbitrator to shift the costs of the arbitration forum, Plaintiff would receive these funds only if he

---

[4]       *See, e.g.*, *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) ($6,000 to $11,000 in estimated arbitration fees was prohibitively expensive regardless of claimant's income); *Ball v. SFX Broadcasting, Inc.*, 165 F. Supp. 2d 230, 240 (N.D.N.Y. 2001) (minimum of $1,000 in daily arbitration fees was prohibitively expensive when claimant was the sole financial support for her family).

were the prevailing party.  *Id.*  In short, the fee-shifting provision in the Arbitration Agreement

does not change the Court's analysis.[5]

## IV.      This Action Is Stayed

A court must stay proceedings "when all of the claims in an action have been referred to

arbitration and a stay [has been] requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.

2015).  Here, Defendants have requested a stay (although they also request dismissal as an

alternative remedy).  *See* Defs.' Mem. of Law, Dkt. 26, at 12.  Accordingly, a stay of this Court's

proceedings pending arbitration is warranted.

Each quarter, the parties must submit a joint letter updating the Court on the status of the

arbitration proceeding.  The first such update is due on **November 1, 2019**.  Subsequent updates

are due every three months, on the first business day of the applicable month.

## CONCLUSION

For all the foregoing reasons, the Court GRANTS Defendants' motion to compel

arbitration, subject to the modifications to the Agreement's cost-sharing provision discussed

above.  This action is STAYED pending arbitration.  Each quarter, the parties must submit a

joint letter updating the Court on the status of the arbitration proceeding.  The first such update is

due **November 1, 2019**.  Subsequent updates are due every three months, on the first business

day of the applicable month.

---

[5]      Defendants cite two cases in support of their argument, but in each, the applicable arbitration organization's rules allowed the arbitrator to "defer or reduce administrative fees" in the event of a party's "extreme hardship." *Zambrano*, 2016 WL 5339552, at *8; *Barbieri v. K-Sea Transp. Corp.*, 566 F. Supp. 2d 187, 195 (E.D.N.Y. 2008). Unlike the provision in the parties' Agreement, the provisions in those cases targeted administrative fees, not attorneys' fees. In addition, unlike the provision in the parties' Agreement, which awards costs only if Plaintiff prevails, the provisions in those cases award costs based on hardship.

The Clerk of Court is respectfully directed to close the open motion at Dkt. 24 and to mark this case as STAYED.

**SO ORDERED.**

**Date:   July 29, 2019**
       **New York, New York**

                             **VALERIE CAPRONI**
                             **United States District Judge**